## Staunton

JOSEPH B. STUTSON, I. GUY WILKINS AND B. M. HERBERT
v. R. R. RICHARDSON.

September 19, 1935.

Present, Campbell, C. J., and Holt, Gregory, Browning,
Chinn, and Eggleston, JJ.

The opinion states the case.

*Herman A. Sacks,* for the plaintiffs in error.

*Rixey & Rixey* and *W. L. Cooper,* for the defendant in
error.

Browning, J., delivered the opinion of the court.

This is a suit by R. R. Richardson on a note for $658.20 executed by Joseph B. Stutson and payable to the order of I. Guy Wilkins and B. M. Herbert and endorsed by the payees, which became the property of Richardson by purchase.

The note was dated Oct. 22, 1930, and was payable thirty days after date but subsequent to its execution the right to pay the same in twelve monthly installments, without interest, was given the maker by I. Guy Wilkins.

The consideration for the note was the issuance of a $15,000.00 life insurance policy by the Equitable Life Assurance Society of the United States. The amount of the note represented the first year premium for such insurance. Wilkins and Herbert were the local agents of the company, who procured the insurance from Stutson, and Richardson was the general agent of the company with offices in the city of Norfolk.

Mr. Stutson had, at the time of the issuance of the policy referred to, other policies of life insurance with the Equitable, which were issued some years before. In the applications for these policies he had stated the year of his birth as 1886, and the policies had been issued and kept up on that basis. Shortly before the execution of the note in question Mr. Stutson became advised that he had been born in 1889 rather than 1886 and he undertook to have this mistake rectified by treaty with the Equitable, but was unable to submit to the company proof, satisfactory to it, of his contention as to his birth date. Mr. Wilkins, who had become acquainted with Mr. Stutson, undertook to assist him with the company in making the desired change, but without success.

It appears that during the communications incident to the above Mr. Wilkins, as agent for his company, solicited additional insurance on the life of Mr. Stutson. Pursuant thereto Mr. Stutson made application for two new policies

on his life, one for $10,000.00 and the other for $5,000.00, in which the date of his birth was stated as 1889. No note was given for the premiums on these policies and no premium was paid. The policies were issued by the company but with a notation on the application stating that the policies were prepared with date birth 1886 and the age of the assured at forty-three, rather than forty which would be the case if the date birth were 1889. It appears that this was done by the company to make the policies agree with those that it was already carrying and which had not been reformed in accordance with Mr. Stutson's wishes. The said two policies were never accepted by Mr. Stutson.

Subsequently he signed a second application dated Oct. 22, 1930, for a policy for $15,000.00. This application shows that the figure nine is under the figure six in 1886. Mr. Wilkins testified that the six was written by him over the nine in the presence and with the consent of Mr. Stutson before the application was signed by Stutson. Mr. Stutson denied this and testified that he knew nothing about the change. In a few days the new policy was delivered by Wilkins and accepted by Mr. Stutson. On Oct. 28, 1930, the date of delivery of the policy the company wrote a letter to Mr. Stutson in which it was stated:

"It is our understanding that you are accepting the above numbered policies with the age based upon a date of birth corresponding to Dec. 2, 1886, but that you would like a letter from the Society stating that such action on your part does not forfeit your rights at any future time to furnish proof that you were born subsequent to that date."

The amount of the note represented the correct amount of the premium due, based on the birth of the assured as 1886. The dates of the application, the note, and the receipt to Stutson acknowledging the payment of the first year's premium and also stating that Stutson was insured from thence, coincide.

The defense made was that Mr. Stutson took the policy and without reading it laid it aside, but upon subsequently reading it he discovered that his birth date had been changed and he at once wrote to Wilkins that the insurance was not what he had ordered and that he, Wilkins, had no right to make the change and advised him that he did not wish the insurance based on the incorrect date. We do not think that the letter which we here quote in full bears out the defense referred to:

"Mr. Wilkins:

I am quite disappointed in your failure to get the forms I wrote you I had.

They have been with me now for a week and if getting them was urgent before it should be now.

Won't you please see me regarding them or let me know where to send them so the matter of the claim will be disposed of quickly. Pardon pencil—its most convenient.

J. B. STUTSON.

P. S. I am also anxious to get the matter of my age disposed of and it should be done with more dispatch, in fact closed up by now for in my present state of mind I may not want the additional insurance at the higher or incorrect age which age you know was filled in without my desire or consent."

On Dec. 15, 1930, the policy was returned to the company and demand was made for the return of the note for the reason heretofore referred to. This was done through a letter written to the company by Mr. Stutson's attorney. It will thus be seen that Mr. Stutson retained the policy from the thirtieth of Oct., 1930, to the fifteenth of Dec., 1930.

Mr. Stutson testified in part as follows:

"I looked at the $15,000.00 and found it had been changed, the age. I took it up with Mr. Woodward and told him I was not going to refuse the $15,000.00, but was going to sue them to make the corrections in the four which I had."

Thus there can be no question of the fact that after Mr. Stutson knew of the change in his birth date he accepted and retained the policy. His testimony as quoted makes this certain.

On Nov. 1, 1930, he wrote Mr. Wilkins about a claim which he was endeavoring to have adjusted and asked him at his earliest convenience to bring "my note with you. I want to curtail."

Stutson's letter of Nov. 10, 1930, to Mr. Wilkins shows that he knew that the policy had been issued on the basis of the date of which he complained. Yet he kept the policy for over a month which was in accord with his declaration to his attorney that "I was not going to refuse the $15,000.00 but was going to sue them to make the corrections in the four which I had."

It is plain that Mr. Stutson was covered by the insurance policy from its date and if he had died after that date his estate would have been entitled to recover the amount of the insurance policy which the premium paid would have purchased at his correct age, whether the date of his birth was 1886 or 1889.

The verdict of the jury was for $594.00 which was $62.00 less than the face of the note. This was a credit allowed on the note because the policy was dated back or predated, which was done to embrace certain features, advantageous to the assured, which were not allowable by the company on account of its changed rules after the date of the policy.

The trial court instructed the jury in accordance with the views which we have expressed and refused the instructions of the defendant which presented his theory of the case. We find no error in the judgment of the trial court, and it is therefore affirmed.

*Affirmed.*